# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        Plaintiff,

  v.                                                   Case No. 07-CR-30

**ALAN SIMMONS**
        **Defendant.**

## DECISION AND ORDER

The government charged defendant Alan Simmons with conspiracy to commit armed bank robbery, 18 U.S.C. § 371, armed bank robbery, 18 U.S.C. §§ 2113(d) & 2, and use of a firearm during a crime of violence, 18 U.S.C. § 924(c). The magistrate judge ordered defendant detained pending trial, and defendant now appeals that decision pursuant to 18 U.S.C. § 3145(b).

## I. BACKGROUND

On February 7, 2007, defendant appeared for an arraignment, and the magistrate judge detained him. Defendant filed a bail review motion on February 27, 2007, which the magistrate judge denied without prejudice. Defendant thereafter submitted additional materials in support of his motion, and the magistrate judge held a hearing on March 22, at which the parties primarily debated the value of property defendant proposed to post. The magistrate judge continued the hearing to March 29 based on the government's recent receipt of recorded jail phones calls, which allegedly depicted defendant's operation of a prostitution business involving a minor female while detained. The government later produced an affidavit from FBI agent Benjamin Hruz who conducted an interview with the minor, M.T., in which she indicated

that she had a sexual relationship with defendant and worked as a prostitute for him. At the continued hearing, the government played recordings of several phone calls defendant made from the jail, which the government argued demonstrated continued criminal activity. Defendant claimed that his relationship with M.T. was lawful, and that he and his associates provided her with transportation to her job at a strip club. The magistrate judge concluded, based on the evidence of continued criminal activity, that defendant posed a danger to the community and continued the detention order.

On May 1, 2007, defendant filed a second motion for bail review, offering to post $15,000 in cash in addition to the property previously proposed. The magistrate judge denied the motion in a written decision, concluding that while the additional cash might be sufficient to ensure defendant's appearance in court, it did nothing to ensure the safety of the community. Defendant then appealed the issue to me.

## II. APPLICABLE LEGAL STANDARDS

### A. Review of Magistrate Judge's Detention Order

When the decision of a magistrate judge is appealed under § 3145, the district judge conducts a de novo review. United States v. Portes, 786 F.2d 758, 761 (7th Cir. 1985). The district judge may "start from scratch" and hold a new hearing or review the transcripts of the proceedings before the magistrate judge. United States v. Torres, 929 F.2d 291, 292 (7th Cir. 1991). In this case, the magistrate judge held two detention hearings and based his ruling on the affidavit of the FBI agent, the recorded phone calls and the proffers of counsel. Given the development of the record before the magistrate judge, I elected to review the transcripts and other submissions, including the recorded calls, in ruling on defendant's motion.

2

**B.     Bail Standard**

A defendant charged with an offense may be (1) released on personal recognizance, (2) released on conditions, (3) temporarily detained to permit revocation of conditional release or (4) detained. 18 U.S.C. §§ 3142(a) & (e). Release may be denied when there are no conditions that will (1) reasonably assure the appearance of the defendant and (2) the safety of the community. 18 U.S.C. § 3142(e). In determining whether there are conditions of release that will reasonably assure the appearance of the defendant and the safety of the community, the court considers: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

If the court finds probable cause to believe that the defendant committed a drug offense carrying a maximum term of ten years or more or an offense under 18 U.S.C. § 924(c), a rebuttable presumption arises that no conditions will reasonably assure the appearance of the defendant and the safety of the community. 18 U.S.C. 3142(e). An indictment charging such an offense is sufficient to trigger the presumption. United States v. Dominguez, 783 F.2d 702, 706 n.7 (7th Cir. 1986). The presumption shifts the burden of production to the defendant to come forward with some evidence that if released he will not flee or endanger the community. Portes, 786 F.2d at 764. Even if the defendant meets this burden, the presumption remains in the case as an evidentiary finding militating against release, but the ultimate burden of persuasion rests with the government. Dominguez, 783 F.2d at 707.

When the government asserts that a defendant must be detained because he is

3

dangerous it bears the burden of proving "by clear and convincing evidence that no condition or set of conditions will ensure the safety of the community." Portes, 786 F.2d at 764. When the government claims that a defendant must be detained as a flight risk it bears the burden of proving by a preponderance of the evidence that no conditions will reasonably assure his appearance in court. Id. at 765.

## III. DISCUSSION

Having reviewed the transcripts of the hearings before the magistrate judge and listened to the recorded jail telephone conversations, I conclude that the detention order should stand.

Because defendant is charged with a violation of § 924(c), he must rebut the presumption that no conditions will reasonably assure his appearance in court and the safety of the community. I will assume that the cash and property defendant proposes are sufficient to rebut the presumption that he is a flight risk,[1] but defendant has not rebutted the presumption of danger to the community.

First, the charged offense is extremely serious. According to the government, an armed and masked man abducted a bank teller from her home and forced her to drive to the bank. There, the robber held a second teller at gun point, ordered the first teller to open the vault, then stole $177,000. The government indicates that this was one of the costliest bank robberies in Wisconsin history. The government further indicates that the teller has significant concerns for her safety, as the robbers know where she lives.

The government alleges that defendant planned the robbery with Antonio Mann and recruited Mark Campbell to rob the bank. Mann and Campbell have both pleaded guilty and

---

[1] Defendant has increased his cash proposal to $35,000.

4

are prepared to testify against defendant at trial. The government claims that the evidence against defendant is strong and includes not just the testimony of the co-actors, but also citizen witnesses who saw defendant scouting the bank, telephone records placing him in contact with the co-actors in the time period leading up to the robbery, and evidence that defendant received a cut of the proceeds and made unusually large expenditures in the weeks following the robbery. Defendant faces significant penalties if convicted, up to twenty-five years in prison for armed bank robbery and seven years consecutive on the § 924(c) charge.

Second, the recorded phone calls and the affidavit of agent Hruz constitute substantial evidence that defendant attempted to engage in criminal activity even while detained. In the first call, defendant demands to know why M.T. didn't do what she was "supposed to do." He presses her over and over, and she apologizes. He then asks her if she is ready to go to work tomorrow, and states "you know it don't stop cos I'm in here." M.T. apologizes again, and defendant states "you supposed to honor whatever." In the second call, defendant apparently calls "Irene," who states that she "dropped them off at work last night" and "they stayed out." Irene assures defendant she is handling things and refers to "power ball" numbers. However, defendant in discussing numbers refers to dollars. On the next call, defendant asks Irene what happened on Saturday, and she refers to 700 – 120 = 600. While Irene does not specify what these numbers mean, they match what M.T. told Hruz about her arrangement with defendant, i.e. that she usually earns $720 on a Saturday night, keeps $120 for herself and gives the rest to Irene. On the final call, defendant asks Irene what happened, and she replies with "power ball" numbers, to which defendant responds, "she worked a double?" Irene says yes. Defendant then tells Irene to give someone named Joshua $20 to "put minutes on her phone." He further tells Irene to tell "her" that "she needs to make something happen," and that Irene

5

won't come to get her until Sunday. Given the context provided by agent Hruz's affidavit, these calls appear to depict defendant operating a prostitution business through others.

I find defendant's claim as to the nature of his relationship with M.T. – that he was providing her with transportation to her job at a strip club – to be unpersuasive given her statement to the FBI agent and the contents of the calls. Specifically, there would be no reason for the coded language employed in several of the calls if the relationship was legitimate, as defendant claims. I also find significant the fact that the numbers discussed during one of the calls match M.T.'s statement as to how the proceeds of her activity were to be divided. Defendant's references to "business" and the authoritative tone he uses with M.T. and the others on the calls provide further support for the inference that he was directing unlawful activity.[2]

It is true, as defendant notes, that his prior criminal record is fairly limited[3] and he has substantial ties to the community. But in light of the evidence presented, I cannot conclude that defendant has rebutted the presumption that he poses a danger to the community.[4]

---

[2] Defendant states that he has recovered an identification card for M.T., which indicates that her name is Katherine Smith, date of birth 7/25/76. He states that his investigator showed the card to employees at the strip club where M.T. danced, and they identified her. He claims that this evidence supports his belief that M.T. was an adult. The government counters that this ID is fake, and that M.T. indicated that defendant personally escorted her to the motor vehicle department and provided the identity documents allowing her to obtain the fake ID. Defendant denies doing this. Regardless of defendant's belief as to M.T.'s age, prostituting her is still illegal.

[3] According to the bond study, defendant was convicted of possession with intent to distribute cocaine in 1998 and disorderly conduct in 2005. Given the nature of the offense, defendant's unemployment and his previous felony drug distribution offense, the pre-trial services officer recommended that defendant be detained.

[4] Defendant notes that he was aware of this investigation for some time yet did not leave the jurisdiction. Again, this may ameliorate the risk of flight but not the danger to the

6

## IV. CONCLUSION

**THEREFORE, IT IS ORDERED** that the magistrate judge's detention order is **AFFIRMED**.

Dated at Milwaukee, Wisconsin, this 20th day of June, 2007.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge

---

community.