**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**UNITED STATES OF AMERICA,**

**Plaintiff,**

v.                                                                  **Case No. 07-CR-30**

**ALAN L. SIMMONS,**

**Defendant.**

---

**RECOMMENDATION DENYING THE DEFENDANT'S**
**MOTION TO SUPPRESS**

---

On February 6, 2007, the grand jury returned a three count indictment alleging that Alan Simmons ("Simmons") conspired to commit a bank robbery, in violation of Title 18, United States Code, Section 371, robbed a federally insured financial institution while using a firearm, in violation of Title 18, United States Code, Sections 2113(a) and (d) and 2, and used and brandished a firearm in a crime of violence, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(iii) and 2.

On June 6, 2007, Simmons filed a motion to suppress identification, and on July 27, 2007 the court conducted an evidentiary hearing regarding this motion. A summary of the evidence adduced at the evidentiary hearing is set forth below. The court ordered the parties to submit simultaneous post-hearing briefs on August 20, 2007 and responses on August 27, 2007. Although both parties submitted initial post-hearing briefs, neither party submitted a response. The pleadings on the defendant's motion to suppress are now closed and the matter is ready for resolution. The Honorable Lynn Adelman has not yet scheduled a date for trial in this matter.

**EVIDENTIARY HEARING SUMMARY**

**MARY RICHTER**

Mary Richter ("Richter") was the vice-president of operations for Stone's Jewelers. Her "sales employee number," 803, is on two of the relevant transaction records for "Alan Jones" that the court received as Exhibit 1. These transactions involved a watch, a pair of diamond earrings, and another small pair of diamond earrings. Exhibit 1 also includes some exchange transactions that were necessary due to defective merchandise.

Richter specifically remembers the customer Alan Jones and describes him a being a black male, thin, and "very-well groomed," "very nice," and "not very tall." Alan Jones would occasionally come into the store alone and sometimes with other persons including Antonio Mann. Richter described Mann as being 5'7" - 5'9," decently dressed and very pleasant. Alan Jones was shorter, 5'1" or 5'2" or approximately Richter's height. In her dealings with Alan Jones, Richter recalls that she learned about his family life and learned that he had a girlfriend who was expecting twins.

Richter left Stone's in August of 2006 because the company was going out of business, which it did in February of 2007. While working at her new job at Rogers & Hollands Jewelers at Bayshore Towne Center, Richter encountered the person she knew as Alan Jones in November or December of 2006. Richter testified that she recognized Alan Jones and Alan Jones said that he had been back to Stone's Jewelers but had not seen her. In this conversation that lasted about ten minutes, Alan Jones mentioned that Antonio Mann was arrested for stealing a lot of money and he was trying to blame him for it. Later that same day, Alan Jones brought his girlfriend to the store, who Richter also recognized from her prior dealings with Alan Jones. This second conversation was very short. When asked if there was anyone in court that she recognized, Richter identified the defendant as the person that she knows as Alan Jones.

Richter recalls talking with a police officer regarding this case and at this time she was shown the paperwork included in Exhibit 1 as well as some photographs. The officer simply asked her to view a bunch of photographs and asked her to point out any person she recognized. She recalls seeing perhaps a dozen photographs that she had to "flip through."

When asked to review Exhibit 2, Richter testified that she cannot be sure if Exhibit 2 is what the officer showed her. She recalls the photos being in a different photograph format, and Richter believes the photographs were 4" x 6" or 5" x 7" and in plastic. Richter testified that she cannot recall the specific details of this identification procedure because she was frequently asked to review photos presented by various police agencies and that at roughly the same time she was asked to review the present photographs she was involved with a separate check fraud investigation.

**POLICE OFFICER SCOTT YANKE**

Police Officer Scott Yanke ("Officer Yanke") is a police officer with the City of Cedarburg and was assigned to the investigation of a the bank robbery that forms the basis for this prosecution. When he contacted Stone's Jewelers, he initially asked if Stone's kept records by name of purchaser. Officer Yanke was informed that Stone's did.

Officer Yanke testified that he presented five photocopies of photographs to each witness one photo at a time, permitted the witness to view the photographs for ten to fifteen seconds and then permitted the witness to view the next photograph. The witnesses were not allowed to handle the photographs; the photographs were presented to the witnesses on the counter. The photographs presented in Exhibit 2 are the actual photographs he presented to the witnesses although he did not present the photographs in the same way the photographs are presented in Exhibit 2.

Before showing any photographs to Jermaine Alexander ("Alexander"), another Stone's Jewelers employee, Alexander identified Antonio Mann by first and last name and identified the other

person as only Alan. Alexander then stated that Richter was also involved in some of the sales of jewelry. Alexander reported that both suspects had an interest in "rose gold" jewelry.

When Officer Yanke contacted Richter, he initially stated that he was conducting an investigation into persons who may have purchased items from Stone's. Richter stated that she was familiar with a person by the name of Antonio Mann and that he frequently shopped with a person she knew as Alan Jones.

**JERMAINE ALEXANDER**

Alexander was an assistant manager at Stone's Jewelers at Mayfair Mall. Alexander's employee number of 817 is on certain of the documents received as Exhibit 1. Alexander recalls a customer that he knew as Alan Jones and recalls selling him one or two items. Alexander particularly remembers this customer because on a day that he was not at Stone's Jewelers, Alan Jones went to Richter who "undersold" Alexander by offering a better price than Alexander. Alan Jones then became Richter's customer. Alexander does recall Alan Jones coming into the store numerous times after he was no longer Alexander's customer. Alexander dealt with Alan Jones for a total of perhaps an hour or two, broken up into roughly fifteen-minute segments over Alan Jones' numerous trips to the store.

Alexander recalls Alan Jones coming in with another person who he knew as Antonio. Both were black males and Alan Jones was shorter. When asked if he recognized anyone in the courtroom as being a customer of Stone's Jewelers, Alexander indicated that that the defendant looks similar but has shorter hair that is more tapered than he recalls. The defendant also appears to be smaller in stature and thus Alexander is not one-hundred percent sure if the defendant was a customer.

Alexander also recalls a defense investigator talking to him over the phone in addition to a police investigator talking to him in person. He does not recall how many police investigators came to the store but believes there may have been two. Alexander is not sure of whether he was contacted first by the police or the defense investigator. Alexander does not recall if he was shown one or multiple

photographs and does not recall how it was that the investigators began their investigation in order to jog his memory. Finally, Alexander believes that he recognized someone in the pictures but cannot recall. Alexander testified that he is confused because he was frequently shown pictures by police relating to a wide variety of matters and does not specially recall this incident.

The government states in its post-hearing brief that it does not intend to call Alexander as a witness at trial, and therefore the defendant's motion to suppress Alexander's identification is moot. Based on the government's representation, the court shall not consider the reliability of Alexander's identification.

## ANALYSIS

A defendant's constitutional right to due process can be violated if there is a "substantial likelihood of irreparable misidentification." Gregory-Bey v. Hanks, 332 F.3d 1036, 1044 (7th Cir. 2003) (quoting Neil v. Biggers, 409 U.S. 188, 198 (1972)). Before a court may determine that an identification procedure was unconstitutional, the defendant must first demonstrate that the procedures utilized were unduly suggestive. Id. at 1045 (citing United States v. Traeger, 289 F.3d 461, 473-74 (7th Cir. 2002); United States v. Harris, 281 F.3d 667, 670 (2002)). If the defendant successfully demonstrates that the identification procedure was unduly suggestive, the court must then evaluate the totality of the circumstances to determine whether the identification was nonetheless sufficiently reliable. Id.

In assessing the reliability of an identification procedure, the courts consider the following factors:

> (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation.

Id. (quoting <u>Neil v. Biggers</u>, 409 U.S. 188, 199-200 (1972)).

In his initial motion to suppress identification, Simmons stated that Officer Yanke presented only a single photograph to each of the identifying witnesses. This information was based upon Officer Yanke's police report, which Simmons attached as an exhibit to his motion to suppress, that stated "JERMAINE ALEXANDER did view a photo of ALAN SIMMONS who he did positively identify as the individual known to him as ALAN." The report also refers to Officer Yanke's contact with Richter but does not indicate that Richter viewed any photographs. After speaking to Richter about the customers, Officer Yanke then returned to Alexander and the report states "JERMAINE ALEXANDER again identified the photograph that I had of ALAN SIMMONS as the individual depicted in their transaction as 'ALAN JONES'."

Based upon the understanding that the witness Alexander was shown a single photograph of Simmons, the court granted Simmons' request for an evidentiary hearing because such an identification may be unduly suggestive. However, as the testimony at the evidentiary hearing made clear, Simmons' understanding of the identification employed was inaccurate, although reasonably based upon the imprecision in Officer Yanke's report. Rather than one witness simply being presented with a single photograph and being asked if he or she recognizes the individual, a procedure commonly referred to as a show-up identification, Officer Yanke utilized a sequential lineup identification procedure where he presented each witness with a series of five photographs, one at a time.

Based upon the facts presented in this case, a sequential lineup identification procedure is not unduly suggestive and thus Simmons fails to satisfy the first prong of test set forth in <u>Biggers</u>. Although Richter was unable to recall certain details of the identification procedure Officer Yanke utilized, she did recall being presented with multiple photographs. Further, Officer Yanke testified that he showed Richter five photographs sequentially.

-6-

Even though Richter testified that she believed the photographs were larger that those in Exhibit 2, her lack of a precise recollection as to the details of the identification procedure is entirely reasonable given that both she and Alexander testified that they were routinely asked by law enforcement to view photographs of suspects of various crimes. Specifically, both Richter and Alexander testified that at roughly the same time as Officer Yanke's investigation, they were asked to view photographs of suspects in an investigation of a bad check.

Even if the court were to conclude that that identification procedure was unduly suggestive, the testimony adduced at the evidentiary hearing makes clear that the identification by Richter was nonetheless reliable. Richter testified that while working at Stone's Jewelers she repeatedly dealt with Simmons. She was able to recall that he told her personal details about his life, such as the fact that his girlfriend was pregnant with twins. Further, Richter testified that she was able to recognize Simmons and his girlfriend when she saw him again at her new job at Rogers & Hollands Jewelers. Finally, the fact that Simmons told Richter that Antonio Mann was accused of stealing a large amount of money and was trying to implicate him indicate that this was not the ordinary sort of transient relationship that a retail salesperson may have with a customer where both parties quickly forget the identity of the other.

Despite the fact that Richter was unable to recall certain details of the identification procedure Officer Yanke utilized, her testimony makes clear that she recalled Simmons. Therefore, even if this court were to conclude that the identification procedure utilized by Officer Yanke was unduly suggestive, the court would nonetheless conclude that the identification was reliable and therefore should not be suppressed.

**IT IS THEREFORE RECOMMENDED** that Alan Simmons' motion to suppress the identification made by Mary Richter, (Docket No. 41), be **denied**. The motion as it pertains to Jermaine Alexander should be **denied** as moot.

Your attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C) and General Local Rule 72.3 (E.D. Wis.), whereby written objections to any recommendation herein or part thereof may be filed within ten days of service of this recommendation.  Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures.  Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case.  Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin, this 28th day of  August, 2007.

BY THE COURT:

s/Aaron E. Goodstein
AARON E. GOODSTEIN
U.S. Magistrate Judge